In the Matter of the Construction of the Will of CHARLES HAYDEN, Deceased.

Surrogate's Court, New York County, June 13, 1951.

*John W. Davis, Walter D. Fletcher, Robert Gerstenlauer* and *N. Loring Bowen, Jr.,* for Sarah Abrams and others, petitioners.

*William M. Parke, George W. Whiteside, Charles Pickett* and *Melvin D. Goodman* for Charles Hayden Foundation, individu-

ally and as a limited partner of Hayden, Stone & Co., and others, respondents.

*William Fitz Gibbon, Mark P. Stumpf* and *Henry L. Ughetta, II,* for Herbert G. Bell and others, individually and as copartners in Hayden, Stone & Co., and another, respondents.

*Nathaniel L. Goldstein, Attorney-General (Corning G. Mc-Kennee* of counsel), respondent, in his statutory capacity under section 12 of Personal Property Law and section 113 of Real Property Law.

COLLINS, S. A group of persons employed by decedent at the time of his death seek a construction of his will and a determination that the fiduciaries under his will and the trustees of the Charles Hayden Foundation have the power and authority, and are under a duty, to create a pension fund for the benefit of veteran employees of Hayden, Stone & Co. The present petitioners claim that they are within that class. Originally there were one hundred thirty-two petitioners. Three have been dropped and two new ones added so that petitioners now number one hundred thirty-one '' veteran employees.''

Decedent was one of the founders and originally only a partner in Hayden, Stone & Co. During the years the extent of his interest in the firm increased until at his death he was sole owner of the business. The business was conducted under a '' partnership agreement '' made between decedent and several individuals. Decedent was entitled exclusively to all profits and was responsible for all losses and expenses. The other '' partners '' were entitled to receive fixed amounts annually so long as they continued in the firm.

The decedent's will and codicil, both dated August 19, 1935, disposed of his substantial fortune. The sixth article deals with '' Copartnership Affairs '', and contains detailed provisions for carrying on the business of Hayden, Stone & Co. and for the nature and extent of the financial support that his fiduciaries could extend to it. No useful purpose would be served in setting forth those provisions in their entirety or in discussing other text of the will. It is sufficient to say that this will and codicil can be examined most carefully from beginning to end without disclosing the slightest token of an intention to direct or to grant specific power to the fiduciaries to establish a pension fund for these petitioners. Indeed, petitioners do not pretend that any specific text contains the claimed benefits. They contend that there is a latent ambiguity in the will and that when its

text is read in the light of relevant extrinsic evidence, their interests appear by necessary implication. The court gave petitioners a full opportunity to prove their allegations, but at the conclusion of a lengthy hearing they failed completely to show any latent ambiguity or to justify any implication of an intent respecting the establishment of a pension fund for petitioners.

Petitioners further contend that even if the will does not direct the creation of a pension fund or does not contain any specific grant of power with respect to the creation of such a fund, nevertheless the relief sought by them is charitable in purpose and the grant of such relief by the fiduciaries would be a proper exercise of the discretion reposed in them by the broad charitable provisions of the fifth article of the will. Petitioners claim that the existence or the nonexistence of this discretion is a question at issue in this proceeding. The Charles Hayden Foundation and the trustees under decedent's will contend that petitioners have no status to litigate this question and that until and unless the foundation should hereafter decide to take some such action and then formulate a concrete proposal with respect thereto, the question of discretion is academic, abstract and moot.

In the fifth article of the will, decedent set forth at length his interest in the education of boys and young men and in the advancement of their moral, mental and physical well-being. He gave his entire residuary estate to his trustees with directions to cause to be incorporated a charitable foundation for carrying out his cherished purposes. The will sets forth proposed objects and purposes of the foundation. It also says: " In thus stating the objects of and the powers to be given to said corporation, I do not intend to limit my said Trustees or the incorporators of said corporation to the language thus employed by me, nor that the charter to be procured by them shall be limited to the objects hereinbefore named, but that such charter shall provide for the power to carry out the objects and purposes thus specified by me, and may contain such other, further and additional enumeration of powers, objects and purposes as my said Trustees, or the incorporators of said corporation, may deem necessary or convenient for the proper fulfillment of the objects and purposes herein expressed, i.e., for charitable and public educational purposes, but not for private gain, and as may be sanctioned by the laws of the State of New York." The Charles Hayden Foundation has been incorporated in accordance with decedent's direc-

tions. Petitioners argue that the creation of a pension system for veteran employees of decedent is for a charitable purpose and that the question of the *power* of the foundation to set up a pension system must be decided by the court because the existence of such authority was alleged in the petition and denied in the answers.

The petition is necessarily lengthy because it attempts to set forth the manner in which the numerous petitioners received benefits under the will of decedent. Reference is made in the petition to different provisions of article sixth of the will (which relates to " Copartnership Affairs ") and in paragraph 10 of the petition the complete text of that article is set forth. Paragraph 16 of the petition alleges, *inter alia,* " that the provisions of Article Sixth give full authority " to the Foundation and the trustees to adopt any and all means which they deem effectual for the continuance of the business in the manner in which it was conducted during decedent's lifetime; paragraph 20 sets forth petitioners' belief that the will " and particularly Article Sixth thereof should be construed to the effect that it is the duty and within the full discretionary powers " of the foundation and the trustees to establish a pension fund for petitioners; paragraph 21 alleges that the establishment of the fund for their benefit is " authorized within the broad powers and discretions granted to Charles Hayden's legal representatives and to the directors and trustees of the Foundation under Article Sixth and other portions of the Will of Charles Hayden and that such plan and the administration thereof would not be a dominating purpose in superiority to the purposes of the Foundation as provided in Article Fifth of Charles Hayden's Will but rather would be the harmonious expression of two separate testamentary intentions of the testator, the one that the business of which he was largely the creator should be a monument to his memory and the other that the charitable purposes of the Foundation should be efficiently and effectively administered." The provisions relating to charities are contained in article fifth of the will.

Before joinder of issue by answer, respondents moved to dismiss the petition on the ground that petitioners had no status to maintain a proceeding to construe the will. Respondents took the position that petitioners had no standing to bring such a proceeding even if respondents had discretion to help them because they were at best only possible recipients of a bounty

which might never be exercised and hence lacked the interest requisite to support such a proceeding.

In that motion petitioners complained that respondents emphasized the allegations of " discretion " rather than those of " duties." They said: " We would concede that the mere charitable status of any organization which in itself might be sufficient to bring it within the discretionary grants of power contained in the Will of Charles Hayden is insufficient to entitle such organization to bring a proceeding to construe his Will. * * * The interest of these petitioners arises from the text of the Will together with latent ambiguities contained in said Will and it is on this basis that their interest depends and not the fact that the purpose is a true charitable purpose which, while not establishing their interest, does further their cause in that it brings them within the scope of the general powers conferred by Charles Hayden upon his legal representatives and upon the Foundation." Again, " Our contention, it must be again emphasized, is not that the petitioners are entitled to a testamentary pension because such a bequest is for a charitable purpose, but that they are entitled to a pension because Charles Hayden intended to provide for them in his Will." They further said: " It is true that the Trustees were given and have broad discretionary powers, but such discretionary powers do not extend to a complete disregard of the testator's direction and intention with respect to veteran employees, and do not and cannot transcend a dominating and major coordinate purpose of the Will." Thus petitioners repeatedly asserted that their allegations of discretion were to be read with their allegations of duty and that the discretion spoken of was something different from the general discretion to benefit an indeterminate number of purely charitable recipients.

This court denied the motion to dismiss the petition, without prejudice to its renewal upon the hearing, in order to afford petitioners an opportunity to establish their alleged rights under the will. (*Matter of Hayden,* 199 Misc. 721.) Thereafter respondents served answers which denied knowledge or information sufficient to form a belief as to the allegations of certain paragraphs of the petition, including paragraphs 16, 20 and 21. The answer of the foundation affirmatively alleged, however, that insofar as the petition asked instructions as to " the supposed discretion " of the foundation to create a pension plan, it relates to matters which are " academic, abstract and moot."

It is undoubtedly true that where a party in interest claims

that the will grants the fiduciary discretion to do an act in his favor and the fiduciary disputes that interpretation of the will, the court can construe the will and advise the fiduciary as to the extent of his power. The court, too, has undoubted power to direct a fiduciary to act when the fiduciary arbitrarily refuses to consider an exercise of the power or arbitrarily abuses his discretion. No such questions are before the court. The interpretation of the will in respect of gifts to charity is not in dispute. The general denials of the respondents must be read in the light of the interpretation placed upon the petition in litigation antecedent to the filing of the answers. Respondents do not say that they have no power to act under article fifth and under the charter of the foundation; they say now and have repeatedly said that none of the indefinite group of charitable beneficiaries can compel them to act favorably toward them and that unless and until they have determined to act in a concrete and specific way, there is nothing for this court to pass upon. Petitioners are now in the very position which, from the beginning, they have denied that they occupy. They are now claiming that under the broad powers granted to the fiduciaries to use the property for charitable purposes, the fiduciaries have the discretion to establish a pension of the kind, nature and extent outlined by petitioners, for the class of persons designated by petitioners and on the terms and conditions suggested by petitioners. Admittedly respondents cannot be compelled to act in favor of petitioners under their general charitable powers alone. Since respondents have not accepted petitioners' plan and have not decided to formulate one of their own, the question of their power to put into effect petitioners' suggested plan is wholly academic. The court is without authority to direct respondents to act in favor of petitioners or to act in any particular manner. It would be futile to litigate the question of their *power* to do something which, for the present at least, they have no intention of doing.

The motion to dismiss the petition must, therefore, be granted. It has been established that petitioners have no status to maintain this proceeding.

There is no merit in the argument that the question of petitioners' status has been heretofore concluded by a decree of this court.

Submit decree on notice accordingly.