CONSOLIDATED FREIGHTWAYS
CORPORATION OF
DELAWARE, Plaintiff,

v.

COAST FREIGHTWAYS, INC., a
California corporation,
Defendant.

and

Related Counter-Claim.

No. CV 85–2943 RG(Gx).

United States District Court,
C.D. California.

Feb. 21, 1986.

Gary W. Wigand, Downey, Cal., for defendant/counter-claimant, Coast Freightways, Inc.

Christopher Ashworth, of Garfield, Tepper & Ashworth, P. C., Los Angeles, Cal., for plaintiff and respondent Consol. Freightways Corp. of Delaware.

### AMENDED ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

GADBOIS, District Judge.

The motion of plaintiff and respondent Consolidated Freightways Corporation of Delaware (hereinafter "CF") to dismiss came on regularly for hearing before the undersigned on January 13, 1986. The Court has considered the briefs and evidentiary materials supplied by both parties. Being informed on the premises, the Court now rules as follows:

I

### INTRODUCTION

CF filed its Complaint seeking to recover freight charges arising from services per-

formed by it on behalf of defendant Coast Freightways, Inc. (hereinafter "Coast"). CF is a motor carrier operating in interstate commerce and the services for which it sought recompense were interstate movements of freight. Where, as here, a motor carrier operating in interstate commerce sues for its charges, its claim against a defendant arises under an Act of Congress regulating commerce, namely 49 U.S.C. § 10761(a). Coast filed its Answer denying the essential allegations of the Complaint. It also filed a counter-claim which alleges that "this claim arises from a common carrier's charges for interstate transportation of property...." The counter-claim further alleges that Coast "is a freight forwarder common carrier authorized as such by the Interstate Commerce Commission...." Lastly, Coast alleged as follows:

> "From ... August 1, 1984, through February 15, 1985, [Coast] interlined through collect freight bills with [CF]. [Coast] interlined said freight bills on Bills of Lading with advanced charges collect. [CF] was to deliver said freight and collect the freight charges from various consignees and thereafter pay defendant [to Coast] its pro rata share of the total freight charges."

CF sought the sum of $58,807.32 by its Complaint (later modified to $57,190.86) and Coast sought $32,174.05 by way of its counterclaim.

In due course, CF filed a motion for partial summary judgment pursuant to F.R.C.P. Rule 56 requesting that this Court declare that certain issues were without substantial controversy, i.e., that it was entitled, apart from any setoffs, to the sum of $57,190.86. The motion was unopposed. The Court granted that motion on August 29, 1985.

## II

### CF'S PENDING MOTION

On December 4, 1985, CF filed its motion to dismiss Coast's counter-claim for want of subject matter jurisdiction pursuant to F.R.C.P. Rule 12. The principal thrust of CF's motion is that Coast (a freight forwarder) may not lawfully interline traffic with CF (a motor common carrier). That being so, according to CF, Coast's claims against it do not "arise under" an Act of Congress regulating commerce and thus this Court has no jurisdiction.

## III

### COAST'S RESPONSE

Coast admits in its response that it is seeking interline charges against CF. At page 3 of its Memorandum in Opposition to the motion, Coast's counsel articulated its position as follows:

> "It is very clear from the pleadings filed with this Court prior to this motion that [Coast] had and does have a viable compulsory counter-claim against plaintiff for *interline* freight charges...." [1]

Coast then claims that its asserted portion of the interline freight charges should be before this Court because they constitute a compulsory counter-claim which would imbue this Court with jurisdiction under F.R.C.P. Rule 13(a).

## IV

### THE COURT'S DECISION

The relationship between CF (a motor common carrier) and Coast (a freight forwarder) is that of carrier and shipper. As the United States Supreme Court has noted, a freight forwarder may be both consignor and consignee, and though not the owner of the goods, it is for all legal purposes the shipper of the goods. *Lehigh V.R. Co. v. United States*, 243 U.S. 444, 37 S.Ct. 434, 61 L.Ed. 839 (1917). Coast asserts that it interlined traffic with CF at a common point of service and that it is entitled to a portion of the revenue on each of the freight bills upon which it has brought its counter-claim. Barring the possibility

---

1. In view of the agreement of both parties that the amounts sought by Coast's counter-claim in the nature of interline settlements, it is unnecessary to address the issues of either "allowances" or "advances" raised by both parties in their papers.

that its claims arise as a compulsory counter-claim under F.R.C.P. Rule 13(a),[2] Coast's claim against CF does *not* arise under an Act of Congress regulating commerce. We start our analysis with 49 U.S.C. § 10705 which declares, in material part as follows:

"(b)(1) The Interstate Commerce Commission may ... prescribe through routes, joint classifications, joint rates ... the division of joint rates, and the conditions under which those routes must be operated, for a motor common carrier of property [such as CF] providing transportation subject to the jurisdiction of the Commission....

(c) The Commission shall prescribe the division of joint rates to be received by a carrier providing transportation subject to its jurisdiction ... when it decides that a division of joint rates established by the participating carriers ... or under a decision of the Commission under subsection (a) or (b) of this section, does or will violate section 10701 of this title....

(h) Any motor common carrier of property who is a party to a through route and joint rate, whether established by such carrier ... or prescribed by the Commission under subsection (b) of this section, shall promptly pay divisions or make interline settlements, as the case may be, with other carriers which are parties to such through routes and joint rate. In the event of undue delinquency in the settlement of such divisions or interline settlements, such through routes and joint rates may be suspended or cancelled under rules prescribed by the Commission."

The evidence adduced by the parties shows that there are no through routes and joint rates for any joint CF/Coast operations established either by the Interstate Commerce Commission nor by CF/Coast having filed any tariff with the Commission. In simple words, the joint routes and rates provisions of the Interstate Commerce Act are simply inapplicable to the relationship between Coast and CF. Moreover, subsection (b)(1) of § 10705 contemplates that these joint rates and routes will apply to common operations "with another such carrier" (another motor common carrier) "or with a water common carrier of property." The federal statutory materials—the *laissez passer* required for federal court jurisdiction—simply do not apply to this relationship in that Coast is a freight forwarder, not a motor common carrier of property nor a water carrier. Indeed, at least one Interstate Commerce Commission decision forbids freight forwarders and motor carriers to establish joint rates and through routes. See *"Joint Rates and Through Routes—Freight Forwarders"* 355 I.C.C. 913 (1977).

The only remotely similar relationship which a freight forwarder may have with a motor carrier must arise in the limited context provided under former 49 U.S.C. § 1009 (now 49 U.S.C. § 10766). That Section declares in material part as follows:

"(b) A freight forwarder providing service subject to the jurisdiction of the Commission ... may contract with motor common carriers ... to provide transportation for the forwarder. *A copy of that contract must be filed with the Commission....*" [Emphasis added.]

The evidence shows that no such contract applicable to the transportation matters at hand is on file with the Commission. Thus, Coast's claim not only does not "arise under" an Act of Congress, it is expressly forbidden by an Act of Congress. Standing alone, Coast's claim does not confer jurisdiction upon this Court.[3]

We turn now to Coast's assertion that its counter-claim against CF is a "compulsory" counter-claim within the contemplation of F.R.C.P. Rule 13(a). Coast sup-

---

**2.** Discussed at some length, *infra*.

**3.** The matter at hand is CF's motion to dismiss for want of subject matter jurisdiction. The *Court does not reach* the issue of whether or not it can recover so-called interline settlements in a state action in the face of forbidding statutory language. That determination, not being necessary to this motion, will not be made.

ports its position with the statement that "[CF's] Complaint alleged transportation services for [Coast] during and/or about the same period of time [as that sought by the counter-claim] to wit, August 29, 1984, through January 14, 1985." The evidence showed, however, that when the bills of lading and freight bills upon which CF premised its claim were compared with the bills of lading and freight bills upon which Coast premised its counter-claim, only three such bills "overlap." More simply stated, only three of the bills on which Coast seeks recovery would fall within the sweep of the Rule 13(a) "compulsory" counter-claim rule. These bills aggregate less than $410.00. More to the point, Coast's claims do not, as contemplated by F.R.C.P. Rule 13(a), "[arise] out of the transaction or occurrence that is the subject matter of the opposing party's claim...." At best, Coast's counter-claim is permissive. If a counter-claim is permissive it is well-settled that there is no federal jurisdiction with respect thereto unless the counter-claim rests on an independent jurisdictional ground. On the other hand, if a counter-claim is compulsory, then it is ancillary to the claim asserted in the complaint and no independent basis for federal jurisdiction is required. See *Waltham Industries Corp. v. Thompson,* 53 F.R.D. 93 (D.C.Conn.1971); *Sangamo Weston, Inc. v. Fairchild Camera & Instrument Corp.,* 26 F.R.S.2d 895 (D.C.Cal.1978); *Binnick v. Avco Financial Services, Inc.,* 435 F.Supp. 359 (D.C.Neb.1977); *Kashulines v. Thermo Contracting Corp.,* 437 F.Supp. 195 (D.C. N.J.1976). Prior to the hearing on this motion, CF tendered to Coast the amount sought by the three "overlapping" freight bills. It would appear now that any arguable compulsory counter-claim on the part of Coast has been mooted.

V

CONCLUSION

The Court concludes from its review of the argument supplied by counsel and the evidentiary materials before it, that Coast's counter-claim is not compulsory in nature

and does not present an independent ground for federal jurisdiction. For those reasons, the motion of CF to dismiss Coast's counter-claim for want of federal court jurisdiction should be, and hereby is, granted.